**STATE OF VERMONT**

**ENVIRONMENTAL COURT**

Appeal of Doyle, <u>et al.</u>      }
                              }
                              }      Docket No. 100-5-02 Vtec
                              }
                              }

### Decision and Order

Appellant Richard Doyle and eighteen other residents of Thompson and Orion Avenues appealed[1] from a decision of the Development Review Board (DRB) of the Village of Ludlow, granting conditional use approval to the Ballard-Hobart Post #36 of the American Legion (Appellee-Applicant) for a private club building to be located at 81 High Street. The appeal from this decision is an on-the-record appeal as the Town has adopted and implemented[2] the procedures necessary for such appeals. Keith O. Arlund, Appellee-Applicant= s > post judge advocate,= participated in the appeal for Appellee-Applicant. The Village, represented by J. Christopher Callahan, Esq., entered an appearance but did not participate in the briefing of this matter.

The record was received by the Court, including audio tapes of the DRB meetings held on December 17, 2001, January 21, 2002 and February 11, 2002, and minutes of the January 21, 2002 and February 11, 2002 DRB meetings. No reason was given why the December 2001 minutes were unavailable or not provided. No party requested that any portion of the hearings be transcribed; the Court listened all the way through all three audio tapes. It also appears that the record does not include the original site plans and other documents, but instead contains composite photocopies of the site plan, building plan, and building elevations. No plan was provided showing the topography of the site or the roadway, although the witnesses at the hearings referred to the > upper= and > lower= portion of the site and referred to the road as being steep. None of the parties provided the Court with the Zoning Regulations; accordingly, the Court will use a copy of the 1990 Zoning Regulations from another case file, as the Zoning Administrator has informed the Clerk of the Court that they have not been amended since that date. Any party objecting to the Court= s use of the 1990 Zoning Regulations shall make that objection known to the Court in writing on or before ten days from the issuance of this decision.

The parties were given the opportunity to submit written memoranda of law and declined to present oral argument. Upon consideration of the record and the parties= memoranda, the Court concludes as follows. The factual findings of the administrative body are not conclusive, but they are given great weight. The Court must determine if substantial evidence exists in the record as a whole from which the factual findings of the DRB might reasonably be inferred.

The property is a 2.65-acre parcel located in the Village Residential zoning district, east of the Black River. The parcel is owned by the State of Vermont and was previously used as a state highway garage; the garage buildings appear to have been removed (See January 22, 2002 minutes, paragraph 35). Appellee-Applicant proposes to build a new building on the parcel, with associated driveways and parking lots. The building has a footprint of 8,150 square feet (as marked on the building plans), and a floor area of 15,964 square feet (as described in the DRB decision).

The parcel forms a trapezoid in shape and has a street address of 81 High Street. Its long westerly side fronts Dug Road and High Street, including the angled intersection at which Prospect Street merges with High Street. Although not marked as such on any plans, Dug Road

is a one-way road downhill to a bridge over the Black River, where it connects with Route 103 (Pond Street), the main road running through the area. The parcel abuts several residential properties to the east and southeast, including those of Appellants Doyle, Agan, Goings, and Radonis; those and other nearby residential properties have access via High Street along Thompson Avenue and Orion Avenue, residential streets in the neighborhood to the east and south of the parcel. The parcel is bounded on the north by lands of Okemo Mountain, Inc.

In the present proceeding, Appellee-Applicant has applied for conditional use approval[3] under the use category of > private club= to construct a new American Legion Hall on the northerly end of the parcel, with its associated driveways and parking areas on the remainder of the parcel. The building is proposed to have a wider central section containing a vestibule, lobby, coat rooms, rest rooms, kitchen, and associated facilities; a westerly section containing a lounge/bar with 40 seats at tables and 23 seats at a horseshoe-shaped bar, a game room and offices; and an easterly section designed as a banquet or function hall accommodating 200 people in seats, banquet tables, and on a stage or dais at the easterly end of the room. The central and westerly sections are proposed to be built over a large basement which is designated on the plans for > storage.= The westerly section with the lounge tables has a door opening onto a patio showing outdoor tables[4] in addition to the 63 indoor seats associated with the lounge/bar use. The easterly banquet hall section is proposed to be built on a slab foundation.

Appellee-Applicant proposes that the main driveway access both into and out from the facility will be located on High Street close to the southwesterly boundary of the property, adjoining the Radonis residential property, at the location of the access for the former state garage. Appellee-Applicant also proposes a service drive extending around the east and north sides of the building with access onto Dug Road at the northwesterly corner of the parcel, but prefers not to have to use that as a required exit onto Dug Road for late night events, unless required to do so by the DRB.

No traffic engineering evidence was presented at all, either by Appellee-Applicant or by the neighbors. There was testimony from the neighbors and from the Chief of Police that the volume of traffic would necessarily increase dramatically, and that there are safety problems due to the narrowness of High Street southerly of the site and the speed of traffic approaching Dug Road from High Street. The Chief of Police also recommended that the DRB require Appellee-Applicant to provide a police officer for security and to direct traffic for any large gathering held at the facility. Although the DRB found that Appellee-Applicant would notify the police department (see footnote 5, below), it did not require as a condition that an officer be hired at the expense of Appellee-Applicant to police the flow of traffic for any large gathering. The DRB made no findings[5] as to the effect of the proposal on either the safety or the volume of traffic on the roads and streets in the vicinity. The DRB imposed a condition that the southwesterly access be used as an entrance only, and that a A no exit@ sign be installed, but did not require its geometry to be redesigned to make it more difficult to exit from that location, and did not require any change in its location to improve its visibility or safety with respect to the Prospect Street intersection or the traffic along High Street. The DRB imposed a condition that the northwesterly access be used as an exit only, and did require that its geometry be redesigned to prevent exiting vehicles from making an illegal left turn onto Dug Road, and that a one-way sign be installed at the exit. Because site plan review has not yet occurred, there has been no review of the adequacy of design of the on-site circulation or the adequacy of the location of the access points onto High Street/Dug Road.

Appellee-Applicant proposes a hedge of unspecified[6] height and vegetation type along most of the easterly and southeasterly border with the residential properties, with a gap of approximately 30 feet (by scale from the photocopied site plan) in the center of the Agan property to accommodate a corner of the proposed parking lot. Between the entrance drive and the building, Appellee-Applicant proposes a large parking lot containing 61 regular parking spaces and four parking spaces for persons with disabilities. Appellee-Applicant proposes that this lot will be lit by

six pole-mounted lights of unspecified[7] heights, fixture-types or wattage. One of these lights is located approximately five feet (by scale from the photocopied site plan) from the Agan property boundary, with no screening at all proposed between the light and the Agan property. Near and to the south of the easterly end of the building Appellee-Applicant proposes an additional seven parking spaces, for a total of 72 designated spaces. Around the building to its north, near the exit driveway of the service drive, Appellee-Applicant has designated an additional parking area with an undefined number of spaces as > extra parking.= The DRB made no findings as to the character of the neighborhood or the effect of a large parking lot and its attendant noise, fumes and lighting on the adjacent residential properties[8]. The DRB imposed a condition that 80 parking spaces were required, including 4 spaces for persons with disabilities. Section 630.2(a) appears to require one or two loading or delivery spaces in addition to the other required spaces, but the DRB made no mention of loading spaces.

Appellee-Applicant made no specific proposals for hours of operation or frequency of use of the hall for large functions (other than as allowed under its state liquor license which was not put into evidence but which was referred to as allowing liquor sales to 2 a.m.), except that Mr. Steeves stated at the February 2002 hearing that Appellee-Applicant= s practice was to close by 1 a.m. and that most weddings were scheduled for the afternoon and were over by 9 or 10 p.m. The DRB made no findings as to the frequency or effect of the use of the hall for large functions, in relation to the effect of the proposal on the character of the neighborhood. The DRB imposed conditions that the A renting of the hall@ for such large functions A can be done once every three weeks,@ without limiting those functions as to weekend days rather than weekdays, and A will require occupants to be done by 11:00 p.m.,@ without specifying whether they would be required to have left the property by that time. The DRB imposed a condition that the clubhouse may be open until 1 a.m. Appellee-Applicant made no specific proposals regarding the use of the outdoor areas on the property, nor regarding the use of music or amplification outdoors, except for Mr. Steeves= statement at the January 2002 hearing that the building would be air conditioned and his suggestion that therefore all functions would take place inside the building. The DRB made no findings and imposed no conditions related to outdoor use, music or amplification outdoors on the property.

In an on-the-record appeal, the factual findings of the administrative body are given great weight, although they are not conclusive. The Court must determine if substantial evidence exists in the record as a whole from which the factual findings of the DRB might reasonably be inferred. See, In re Petition of Town of Sherburne, 154 Vt. 596, 604-05 (1990); Appeal of Lussier and Noe, Docket No. 116-5-02 (Vt Envtl. Ct., Sept 16, 2002). If there is conflicting evidence, the DRB is the body charged with weighing this evidence, and the Court will not disturb its factual findings if supported by substantial evidence in the record as a whole.

Use Category as > Private Club=

The facility= s proposed use is as a private club, allowed in this zoning district if approved as a conditional use. ' 520. The question of what limitations on use qualify a proposal for consideration as a > private club= is a legal question, not a factual question. It is governed by the definition of > private club= in the Zoning Regulations, not by the state liquor control program. The definition in Article 2 of the Zoning Regulations defines a private club as a A [b]uilding or use catering exclusively to club members and their guests for recreational purposes and not operated for profit.@ Emphasis added. In order to be considered for approval as a conditional use in this district, Appellee-Applicant must remain within this definition, which means that the banquet hall cannot be rented for profit to anyone, including members, and cannot be used by non-member groups or non-profit or for-profit organizations, even if the space is donated by Appellee-Applicant. Appellee-Applicant seems to have recognized this restriction part way through the application process, and submitted a letter on February 11, 2002, informing the DRB that A the proposed banquet hall included in this project will be available only to members of our organization or immediate family members.@ Appellee-Applicant must keep its operations within

the definition of > private club,= and neither the DRB nor this Court has any authority under the regulations to alter the requirements of that definition.

Conditional Use Criteria

To approve a conditional use the DRB must make findings from the evidence regarding the effect of the proposal on all four of the following criteria: 1) the capacity of existing and planned community facilities; 2) the character of the area affected; 3) traffic on roads and streets in the vicinity; and 4) bylaws then in effect. ' 360. The DRB may attach reasonable conditions as necessary to implement the ordinance. The DRB made adequate findings from substantial evidence in the record that the proposed use will not adversely affect the capacity of existing and planned community facilities. We take each of the other criteria in turn.

Character of the neighborhood

The DRB= s findings are entirely inadequate on this criterion, nor is there substantial evidence in the record to support a conclusion that the character of the residential area to the southeast of the proposal will not be adversely affected by the project as proposed. The DRB made no photographic or written record of its observations during the site visit, nor are there any photographs of the surrounding area in the record. The DRB made no factual findings regarding what is the extent or the character of the area potentially affected by this project, nor on how the project might affect or be compatible with the character of the area. The five DRB findings under this heading (see footnote 8, above) fail to describe the character of the neighborhood and fail to make any factual statement about the effect of this proposal on that character. It is entirely possible that there was evidence from the site visit that would have allowed the DRB to make these findings, but the DRB did not do so. The only evidence on the character of the neighborhood or on the effect of the project on that character found in the record available to the Court for review (in the audio tapes of the three hearings and the documents submitted to the DRB at those hearings) supports Appellants= position that the project, and especially the potential for an unlimited number of large, late night events and outdoor noise and lighting, would adversely affect the character of the neighborhood, unless appropriate conditions were imposed to limit these adverse effects.

Traffic on roads and streets in the vicinity

The DRB= s findings are entirely inadequate on this criterion, nor is there substantial evidence in the record to support a conclusion that traffic passing by on the adjacent roads and streets will not be adversely affected by the project as proposed. The DRB made no factual findings regarding what the current level of traffic is on the roads and streets in the vicinity of the project, nor on what traffic can be expected to be generated by the project, nor on its effect on the traffic on the roads and streets in the vicinity. The four DRB findings under this heading (see footnote 5, above) fail to describe the traffic to be generated by the project and fail to make any factual statement about the effect of that traffic on the safety or the volume of the traffic in the vicinity. It is entirely possible that there was evidence that could have been submitted by Appellee-Applicant= s engineer that would have allowed the DRB to make these findings, but Appellee-Applicant did not submit any traffic evidence and the DRB did not make such findings. The only evidence on the traffic existing on the nearby roads available to the Court for review (in the audio tapes of the three hearings and the documents submitted to the DRB at those hearings, including the Chief of Police= s testimony and letter) supports Appellants= position that the project will generate substantial traffic during large events, that High Street is narrow, that traffic from High Street to Dug Road often drives too fast for conditions, that the location of the southwesterly access may conflict with traffic on High Street, and that the traffic from the project would adversely affect the traffic on streets in the vicinity, unless appropriate conditions were imposed to limit these adverse effects. The DRB does appear to have adopted the traffic

recommendations of the Chief of Police as conditions of the approval (see conditions 3, 8, and 16), but made no findings on this criterion.

<u>Bylaws then in effect</u>

Because the project has not yet obtained site plan approval, it is difficult for the DRB or this Court to determine if it is in compliance with the requirements of ' 380.2 of the Zoning Regulations as to on-site circulation, access to the adjacent streets, parking and loading, screening and lighting, and in particular whether the project has achieved A maximum compatibility and protection to adjacent property@ as required by ' 380.2(3). The DRB made only five > findings= under the compliance-with-the-regulations criterion: that the parcel is within the Village Residential district, that > private club house= is a conditional use for that district, and that the project meets the setbacks, building height, and coverage requirements of the regulations. The DRB= s findings are entirely inadequate on this criterion as it relates to the proposal= s compliance with ' 380.2, nor is there substantial evidence in the record to support a conclusion that the project as proposed meets ' 380.2. It is also unclear from the evidence whether the 80 required parking spaces have been or can be provided, whether a loading space is required, or whether the proposal meets the performance standards of ' 650.4 of the Zoning Regulations.

Based on the foregoing, it is hereby ORDERED and ADJUDGED the decision of the DRB granting conditional use approval of the property at 81 High Street for a private club is hereby vacated and remanded for further findings or further proceedings before the DRB, because the DRB failed to make any factual findings regarding the effect of the project design or the traffic generated by the project on the roads and streets in the vicinity of the project, failed to make any factual findings regarding the effect of the project on the character of the area, and failed to make any factual findings regarding compliance with ' 380.2.

However, because this is an on-the-record appeal, we must note that the DRB is free to make such findings if they can be drawn from the evidence in the record, and is free to hold a supplementary hearing to take any additional evidence, and to issue a revised ruling on the project application. This decision by the Court is solely a decision on whether there was evidence in the record and adequate findings on the contested issues, and does <u>not</u> represent any ruling on whether the conditional use permit should or should not be granted. We note that in any such supplementary proceedings, Appellee-Applicant is free to amend its application or to present additional traffic or engineering evidence, and Appellants are free to engage a traffic engineering expert of their own and to present additional evidence on the contested issues. We also note that Appellee-Applicant may wish to apply for site plan approval so that it can be considered by the DRB at the same time as the remanded proceedings on this conditional use application, as it is necessary for Appellee-Applicant to have both approvals before a zoning permit could be granted to allow the commencement of construction.

Dated at Barre, Vermont, this 21st day of January, 2003.

_____
Merideth Wright
Environmental Judge

---

**Footnotes**

[1] We note that Appellee-Applicant argues that certain of the conditions imposed may be excessive or unnecessary; however, as Appellee-Applicant did not appeal the imposition of these conditions, they are not before the Court in this appeal.

[2] The quality of the December 2001 audio tape is such that the DRB members' statements are audible, but the applicant's or other witnesses' statements are virtually inaudible or unintelligible in places. The quality of the audio tape of the January 2002 hearing is adequate, but the tape supplied to the Court only contained recording on one side, and only contains the audio through approximately paragraph 23 of 45 paragraphs of the minutes for that hearing. Both the quality and the content of the February 2002 audio tape are adequate, although the second side of the tape cuts off just before the end of the hearing. If the Ludlow DRB wishes to continue to conduct on-the-record proceedings, it must take care to make an adequate record, capable of being transcribed or listened to, and to transmit the complete record to the Court. V.R.C.P. 76(e) and 74.

[3] The proposal also requires site plan approval, as it is not a permitted use but is a conditional use in the district. §380. Site plan approval was not before the DRB and hence is not before the Court in this appeal. To obtain site plan approval, an applicant must meet and the DRB must make findings and conclusions on all the standards in §380.2, including specifically the safety of vehicular circulation between the site and the street; the adequacy of on-site circulation, parking, landscaping, and screening; and the effect of the project on adjoining properties. The DRB may impose conditions in connection with approval of a site plan.

[4] At the January 2002 hearing, the Appellee-Applicant's witness, Mr. Steeves, stated that the building would be air conditioned and that all functions would take place inside the building.

[5] The DRB made only four 'findings' under the traffic criterion: a calculation of the required parking spaces, that it will use the existing driveway and a new exit onto Dug Road, that "the applicant will notify the Ludlow Police Department of special events or renting of the hall, for traffic controlling," and that, as the traffic would consist of passenger vehicles rather than state highway trucks, it would not adversely impact the roads, that is, the road surface or maintenance.

[6] At the December 2001 hearing the Appellee-Applicant's witness stated that the hedge would be 'four or five feet' high. No landscaping details or specifications were included in the record. The DRB imposed a condition of a ten-foot-wide grassed buffer strip and a six-foot-high hedge, but made no requirements regarding the density of the hedge or the species of vegetation.

[7] At the December 2001 hearing the Appellee-Applicant's witness stated that the lighting would be approximately 14 feet high and shielded, and that 'we have brochures' showing the specifications. At the January 2002 hearing Appellee-Applicant's witness, Mr. Steeves, stated that Appellee-Applicant could work out satisfactory lighting, but made no specific proposals. No brochures or specifications for the lights were included in the record, and the DRB only imposed a condition that the lighting 'must not disturb' adjacent property owners and must automatically shut off one hour after the building is closed.

[8] The DRB made only five 'findings' under the character-of-the-neighborhood criterion: a quotation of the purpose statement for the Village Residential district, that the parcel is within that district, that the parcel meets the minimum lot size for that district, that the parcel was formerly used for the state highway department and that a private club house is listed as a conditional use in the district, and the conclusory statement that "the Private Clubhouse, as proposed, meets all District Standards and the Board finds that the project will have no adverse effects on the character of the neighborhood."